# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

**SYNERGISTIC**
**INTERNATIONAL, LLC,**

           **PLAINTIFF,**

      **v.**                        **CIVIL ACTION NO.: 2:05CV49**

**JODY FINE KORMAN, individually,**
**And d/b/a THE WINDSHIELD DOCTOR®,**
**A WINDSHIELD DOCTOR, and**
**GLASS DOCTOR,**

           **DEFENDANTS.**

## OPINION AND ORDER

This matter came before the Court on cross-motions for summary judgment. Defendant

moved for summary judgment (Doc. 17) and Plaintiff filed a cross-motion for summary judgment

(Doc. 23). By letter dated September 9, 2005, the Court informed the parties that it would grant

summary judgment on liability to Plaintiff and hear evidence and argument concerning the

remaining issue of appropriate relief on September 19, 2005. This Order explains the Court's

ruling and sets forth the Court's findings with respect to damages.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY:[1]

---

[1]The Court commends counsel for both parties for stipulating to fifty-one (51) undisputed facts in the Order on Final Pretrial Conference [hereinafter "UF 1-51"]. The Final Pretrial Conference occurred prior to the cross-motions for summary judgment becoming ripe; therefore, in deciding the motions, the Court was able to rely upon the fifty-one undisputed facts. With few exceptions, the undisputed facts are cited verbatim.

Plaintiff Synergistic International, LLC, [hereinafter "Synergistic"] is a nationwide

franchisor and operator of a glass installation and repair service system operating under the name

GLASS DOCTOR®.  Defendant Jody Fine Korman [hereinafter "Korman"] is the

owner/operator of a windshield repair business in the Virginia Beach area under the service mark

"The Windshield Doctor" (the "THE WINDSHIELD DOCTOR® Mark").

On May 31, 1977, one of Synergistic's predecessors-in-interest received from the United

States Patent and Trademark Office (the "USPTO") United States Service Mark Reg. No.

1,066,929 on the Principal Register, covering the service mark "GLASS DOCTOR," in block

letters, for use in connection with "installation of glass in buildings and vehicles" (the "GLASS

DOCTOR® Registration").  Stipulation of Undisputed Facts [hereinafter "UF"] 31.  Synergistic

is the current owner of the GLASS DOCTOR® Registration, and the GLASS DOCTOR®

Registration remains in full force and effect.  Id.  The GLASS DOCTOR® Registration was

issued by the USPTO without requiring proof of secondary meaning under Lanham Act § 2(f), 15

U.S.C. § 1052(f).  Id.  The GLASS DOCTOR® Registration has become incontestable pursuant

to Lanham Act § 15, 15 U.S.C. § 1065, because the GLASS DOCTOR® Mark shown therein has

been in continuous use in commerce for more than five years from the date of registration and

because the required affidavit of incontestability has been filed with, and accepted by, the

USPTO.  Id.

In 1987, Korman began operating a windshield repair business in the Virginia Beach area

under the service mark "The Windshield Doctor" (the "THE WINDSHIELD DOCTOR®

Mark").  UF 18.  In 2002, Korman filed an application with the USPTO to register her THE

WINDSHIELD DOCTOR® Mark.  UF 22.  On December 9, 2003, the USPTO granted Korman

2

U.S. Service Mark Reg. No. 2,790,862 for her THE WINDSHIELD DOCTOR® Mark for use in connection with "repair services, namely, vehicle windshield repairs for cracks, chips and stars in windshields."  UF 23.

In addition to "THE WINDSHIELD DOCTOR," Korman has also used the service marks "A WINDSHIELD DOCTOR," "WINDSHIELD DOCTOR" and "DOCTOR WINDSHIELD" in association with her WINDSHIELD DOCTOR Business.  UF 34.  Korman has also used the service mark "GLASS DOCTOR" in connection with her WINDSHIELD DOCTOR Business (her "GLASS DOCTOR Mark").  UF 35.  Korman testified that she adopted her GLASS DOCTOR Mark in connection with her WINDSHIELD DOCTOR Business in 2000.  Id. Korman has used her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark interchangeably in commerce – offering the same service to the same customers at the same prices in the same advertising media in Virginia Beach, Norfolk, Chesapeake, and Portsmouth, Virginia.  UF 38.  Korman's use of her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark was and is without oral or written authorization from Synergistic.  Id.

Neither Synergistic nor any of its predecessors-in-interest actually used the GLASS DOCTOR® Mark in commerce in the Virginia Beach area in connection with windshield repair services prior to 1987.  UF 14.  In the Spring of 2005, Synergistic converted, or "re-flagged," a former Harmon AutoGlass franchise located in Virginia Beach, Virginia, to operate under the GLASS DOCTOR® Mark and to provide glass installation, replacement and repair services, specifically including automobile glass repair services, in Virginia Beach, Norfolk, Chesapeake, Portsmouth, and Suffolk, Virginia (the "Virginia Beach area").  UF 26, 33.  In the Summer of 2005, the signage and related promotional/advertising materials relating to this location were

changed to show operation under the GLASS DOCTOR® Mark.  Id.

On August 25, 2004, Synergistic's in-house counsel sent a certified letter to Korman informing her of Synergistic's prior and superior rights in the GLASS DOCTOR® Mark and requesting the immediate cessation of Korman's use of her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark in connection with her WINDSHIELD DOCTOR Business.  UF 50. Korman ceased her advertising for her GLASS DOCTOR Mark upon receipt of this letter, but continued to use her WINDSHIELD DOCTOR Marks in connection with her WINDSHIELD DOCTOR Business.  Id.

On January 22, 2005, Synergistic filed a complaint alleging five causes of action: (1) service mark infringement under Section 32 of the Trademark Act of 1946 [hereinafter the "Lanham Act"], 15 U.S.C. § 1114; (2) necessary cancellation of Federal Trademark Registration under Section 2 of the Lanham Act, 15 U.S.C. § 1052;[2] (3) federal unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair methods of competition and unfair or deceptive trade practices under Virginia state law; and (5) common law unfair competition in violation of the common law of Virginia.  Compl. at pp. 1-2.  Korman[3] filed her motion for summary judgment on August 2, 2005.  Synergistic filed its cross-motion for summary judgment on August 15, 2005.  The motions were not set for hearing because, collectively, they did not mature until after the FED. R. CIV. P. 16(d) Final Pretrial Conference; however, the parties consented to have the motions determined on the briefs submitted.

_____

[2]Cancellation of Korman's service mark is included in the discussion of appropriate relief, Section IV, *infra*, but Count 2 was not considered during the Court's determination of liability at summary judgment.

[3]Previously, Korman moved to join her former business partner and his current business partner as third-party defendants.  (Doc. 9.)  For the reasons discussed in the Order entered May 23, 2005, the Court denied the motion.  See Doc. 13.

## II. STANDARD OF REVIEW:

Summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); see also Miller v. Leathers, 913 F.2d 1085, 1087 (4th Cir. 1990). The facts and inferences drawn from the pleadings must be viewed in the light most favorable to the nonmoving party. Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). Summary judgment is appropriate when the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986).

In order to successfully defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations and denials contained in the pleadings." Doyle v. Sentry Ins., 877 F. Supp. 1002, 1005 (E.D. Va. 1995) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)). Rather, the nonmoving party must set forth specific facts through affidavits, depositions, interrogatories, or other evidence to show genuine issues for trial. Celotex, 477 U.S. at 324. These specific facts must be such that a rational trier of fact could base a finding for the nonmovant upon them. "The mere existence of a scintilla of evidence . . . will be insufficient." Anderson, 477 U.S. at 252.

## III. ANALYSIS:

The United States Court of Appeals for the Fourth Circuit has recognized that "the test for trademark infringement and unfair competition under the Lanham Act is essentially the same as that for common law unfair competition under Virginia law because both address the

likelihood of confusion as to the source of the goods or services involved." Lone Star

Steakhouse & Saloon, Inc., v. Alpha of Virginia, Inc., 43 F.3d 922 (4th Cir. 1995).[4]  "The

likelihood of confusion is a factual issue dependent on the circumstances of each case.  See Petro

Stopping Ctrs., L.P. v. James River Petroleum, Inc., 130 F.3d 88, 92 (4th Cir. 1997).

Nevertheless, summary judgment is appropriate when the material, undisputed facts disclose a

likelihood of confusion.  See Lone Star, 43 F.3d at 935."  Resorts of Pinehurst, Inc., v. Pinehurst

National Corporation, et al., 148 F.3d 417, 422 (4th Cir. 1998).  Likelihood of confusion is but

the second half of the test for trademark infringement and unfair competition; the first half

requires a complainant to "demonstrate that it has a valid, protectible trademark . . . ."  Lone Star,

43 F.3d at 930.  The Court will address each half of the test in turn.

A.  Valid, Protectible Trademark

        The parties stipulate that Synergistic is the current owner of the GLASS DOCTOR®

Registration; that the registration remains in full force and effect; and that the GLASS

DOCTOR® Registration has become incontestable.  UF 31.  Because "incontestability is

'conclusive evidence of the validity of the registered mark and of the registration of the mark,

and of the registrant's exclusive right to use the mark in commerce,' 15 U.S.C. § 1115(b)," it is

not surprising that the parties further agree that the GLASS DOCTOR® Mark qualifies for legal

protection.  UF 51; see also Lone Star, 43 F.3d at 930.  The question is the scope of legal

protection for which the mark qualifies.

        Korman contends that Synergistic "is not afforded the benefit of the 'exclusive right' to

use the mark "glass doctor" in connection with services outside of those recited in the federal

_____

[4]In the instant case, those claims are Counts 1, 3, and 5, respectively.

registration of the "GLASS DOCTOR® mark under 15 U.S.C. § 1115(a)."  Korman's Mem. in

Supp. Mot. Summ. J. at p. 1.  Because the only services recited in the GLASS DOCTOR®

Registration are "installation of glass in buildings and vehicles," UF 6, Korman argues that

Synergistic cannot establish superior rights in the GLASS DOCTOR® Mark in connection with

windshield *repair* services.  Korman's Mem. in Supp. Mot. Summ. J. at p. 3 (emphasis added).

Korman's argument is contrary to the law of this and other circuits, holding that "the

rights of the owner of a registered trademark are not limited to protection with respect to the

specific goods stated on the certificate . . . but extend to any goods related in the minds of

consumers in the sense that a single producer is likely to put out both goods." E. Remy Martin &

Co., S.A. v. Shaw-Ross International Imports, Inc., 756 F.2d 1525, 1530 at fn. 18 (11th Cir.

1985) (citing American Foods, Inc. v. Golden Flake, Inc., 312 F.2d 619, 623 (5th Cir.1963)).

The Fourth Circuit has specifically noted that a suggestive mark "will ordinarily be protected

against the use of the same or a confusingly similar mark *on the same product or related*

*products, and even on those which may be considered by some to be unrelated but which the*

*public is likely to assume emanate from the trade mark owner*." Pizzeria Uno Corp. v. Temple,

747 F.2d 1522, 1527 (4th Cir. 1984) (citing 1 *Gilson, Trademark Protection and Practice*, §

2.01, pp. 2-3 and 2-4 (1984) (italics in citing source).  A reasonable person is particularly likely

to believe that complementary services emanate from the same source. See Communications

Satellite Corp. v. COMCET, Inc., 429 F.2d 1245, 1253 (4th Cir. 1970).

In the case at bar, the parties stipulate that the public weighs the options of windshield

repair versus replacement prior to purchasing.  UF 41.  Korman, a self-avowed windshield repair

person, "admits that she receives calls inquiring whether she performs windshield

installation/replacement services." Id. Unmistakably, the public thinks that the holder of a trademark in this area would provide both services. Following Fourth Circuit precedent, so long as the GLASS DOCTOR® Mark is suggestive, Synergistic would ordinarily be entitled to protection against the use of a confusingly similar mark in connection with windshield repair services. For the reasons discussed in Section IIIB1, *infra*, the Court FINDS that the GLASS DOCTOR® Mark is suggestive. Thus, with respect to Claims 1, 3, and 5, the remaining issue is whether there exists a genuine issue of material fact concerning the likelihood of confusion between the GLASS DOCTOR® Mark and the WINDSHIELD DOCTOR® Mark. See Contemporary Restaurant Concepts, LTD., v. Las-Tapas-Jacksonville, Inc., 753 F. Supp. 1560, 1563 (M.D. FL January 8, 1991).

B. Likelihood of Confusion

In Pizzeria Uno Corp. v. Temple, the Fourth Circuit delineated seven factors a court must weigh to determine whether a likelihood of confusion exists: (1) the strength or distinctiveness of the mark; (2) the similarity of the two marks; (3) the similarity of the goods and services that the marks identify; (4) the similarity of the facilities that the two parties use in their businesses; (5) the similarity of the advertising the two parties use; (6) the defendant's intent; and (7) actual confusion. 747 F.2d at 1527. But not all the factors are of equal relevance in every case. Id.

(1) Strength or Distinctiveness of the Mark

"Courts have classified marks submitted for registration into four groups in an ascending order of strength or distinctiveness: 1. generic; 2. descriptive; 3. suggestive; and 4. arbitrary or fanciful." Id. (citing Abercrombie & Fitch Co. v. Hunting World, Inc., 189 U.S.P.Q. (BNA) 759 (1976)). For the reasons described *supra*, placement of the mark in question above the

descriptive level on the continuum is critical to the determination of Claims 1, 3, and 5.  The

distinction between descriptive and suggestive can be a fine line; so, "courts have developed

legal definitions of the two terms."  Id. at 1528 (citation omitted).

> [A] word or figure is descriptive if it "identifies a characteristic or
> quality of an article or service," and a suggestive term is "one
> which 'suggests rather than describes' some characteristic of the
> goods to which it is applied and requires the consumer to exercise
> his imagination to reach a conclusion as to the nature of these
> goods."

Id. (citing Soweco, Inc., v. Shell Oil Co., 617 F.2d 1178, 1183 (5th Cir. 1980), cert. denied, 450
U.S. 981 (1981).

To obtain its GLASS DOCTOR® Registration, one of Synergistic's predecessors-in-

interest was required to disclaim exclusive rights in the word "Glass" apart from the mark as

shown.  UF 31.  "Where a proposed mark consists of but two words, one of which is disclaimed,

the word not disclaimed is generally regarded as the dominant or critical term in determining the

distinctiveness or suggestiveness of the proposed mark."  Pizzeria Uno, 747 F.2d at 1529-1530.

Thus it is important to determine whether "Doctor" is descriptive or suggestive.  Based upon the

established definitions, the Court FINDS that "Doctor" suggests the characteristic or quality of

healing, from which a consumer must imagine that "healing glass" means repairing or replacing;

therefore, the GLASS DOCTOR® Mark is suggestive.

This finding accords appropriate respect to the USPTO's initial characterization of the

mark's strength.  In Pizzeria Uno, the Fourth Circuit explained that when the USPTO registers a

mark without requiring proof of secondary meaning it has concluded that the mark is, at a

minimum, suggestive.  747 F.2d at 1529 (citations omitted).  A court must consider the USPTO's

conclusion prima facie correct.  Id.  Here, the parties stipulated that The GLASS DOCTOR®

Registration was issued by the USPTO without requiring proof of secondary meaning.  UF 31.

9

But "the placement of a mark in either the suggestive or descriptive category is merely the first step in assessing the strength of a mark for purposes of the likelihood of confusion test." Petro Stopping Ctrs., L.P. v James River Petroleum, 130 F.3d 88, 93 (4th Cir. 1997) (citing Lang v. Retirement Living Publ'g Co., 949 F.2d 576, 581 (2d Cir. 1991); et al.).  Therefore, the Court observes that the record contains evidence that Synergistic has engaged in activity to increase the recognition of the GLASS DOCTOR® Mark.  See Lone Star, 43 F.3d at 926.  These activities include the following: a) national television advertising, which has reached into Virginia markets since 1999; b) posting of a www.glassdoctor.com website, through which on-demand replays of the commercials and other information is accessible; and c) maintaining a toll-free phone number.  See Declaration of Robert E. Tunmire, Synergistic's Cross Mot. Summ. J. at Tab 2, Ex. A; Deposition of Robert E. Tunmire, Korman's Mot. Strike Pl.'s Evidence at Ex. A; and Korman's Mot. Compel Disc. at Ex. L.  The result of these measures is that there are at least one hundred thirty-three (133) the GLASS DOCTOR® franchises operating in forty-three (43) states. Decl. of Tunmire at p. 2.  Last year, those franchises grossed several million in sales.  Id. at p. 3.

Korman challenges the evidence offered by Synergistic through Mr. Tunmire,[5] but sets forth no specific facts that create a genuine issue with respect to Synergistic's national advertising, success in franchising, or gross profits.  Viewed in a light most favorable to Korman, the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, establish that the GLASS DOCTOR® Mark is strong enough to support franchising of one hundred thirty-three (133) locations and to generate sales of several million dollars.  There is

---

[5]Three days prior to the Final Pretrial Conference, Korman filed a Motion to Strike Plaintiff's Evidence, asserting in part that Mr. Tunmire lacked personal knowledge to testify and that his declaration conflicts with his deposition in this case.  It is undisputed that Mr. Tunmire was, at the time of filing of this case, the President of Synergistic; thus, the Court denied Korman's Motion to Strike him as a witness.  Order on Final Pretrial Conference, Doc. 31, at p. 19.

no evidence in the record upon which a rational trier of fact could conclude that the GLASS

DOCTOR® Mark is so weak that it should not be afforded the protection ordinarily extended to

a suggestive mark.

(2) Similarity of the Two Marks

The Fourth Circuit acknowledges a "settled principle of trademark law" that "the

dominant part of a mark may be given extra weight on the issue of likelihood of confusion . . . ."

Pizzeria Uno, 747 F.2d at 1530 (citations omitted).  For this reason, "identity of the dominant

term in both marks is a strong indicator of that similarity in appearance and sound which would

result in confusion."  Id.  As previously noted, the dominant element of the GLASS DOCTOR®

Mark is the word "Doctor."  UF 32.  To obtain its GLASS DOCTOR® Registration, one of

Synergistic's predecessors-in-interest was required to disclaim exclusive rights in the word

"Glass" apart from the mark as shown.  Id.  Similarly, the most prominent portion of the

WINDSHIELD DOCTOR Registration is the word "Doctor."  UF 37.  To obtain her

WINDSHIELD DOCTOR Registration, Korman was required to disclaim the word

"Windshield" apart from the mark as shown.  Id.

There is no genuine issue that the similarity of the two marks is likely to cause confusion.

Windshield and glass, the minor, first words of each mark, are synonymous within the context of

automobiles.  Doctor, the dominant, second word of each mark, is identical.  The marks are so

similar that Korman was willing to pay for a telephone listing for the GLASS DOCTOR to refer

customers to her the WINDSHIELD DOCTOR business.  UF 47 and 48.

(3, 4) Similarity of Goods, Services, and Facilities

The third and fourth factors to be considered are whether the services provided are similar

11

and whether the manner in which they are provided are similar.  These factors have been

discussed to some length in Section IIIA, *supra*.  Korman takes the position that the GLASS

DOCTOR® Mark qualifies for legal protection only with respect to "installation of glass in

buildings and vehicles," UF 6, and that she is engaged in only windshield "repair services,

namely, vehicle windshield repairs for cracks, chips and stars in windshields,"  UF 22.  Even

when viewed in such abstract terms, Synergistic and Korman offer similar services.  As

mentioned previously the public believes windshield repair goes hand-in-hand with windshield

replacement.  UF 41.  In such cases, it is well cited law that "complementary products, or

services, are particularly vulnerable to confusion."  Communications Satellite Corp. v.

COMCET, Inc., 429 F.2d at 1253 (citing Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407

(2d Cir. 1917) (subsequent history omitted)).

      Peering closer, the business reality is that Synergistic and Korman offer the exact same

services.  The parties stipulated that both: offer windshield repair, UF 18 and 40; to Virginia

Beach customers, id.; via mobile repair facilities, UF 42.  And both parties are willing to bill

claims directly to customer's insurance companies.  UF 43.  It is undisputed that Korman does

not offer the full array of services that Synergistic does and that Korman provides mobile service

only, whereas GLASS DOCTOR® franchises offer in-store and mobile services, but these

distinctions do not lessen the likelihood of confusion created by the similarity of factors three and

four.  If it did, a junior service mark holder could avoid liability for infringement by merely

offering some of the services in which the senior service mark holder is engaged.  Where, as

here, the junior's subset of services encompasses ninety percent of the senior's business, absurd

results would ensue.  See UF 40 ("currently, approximately ninety-to ninety-five percent of the

business at the Virginia Beach GLASS DOCTOR® is a windshield installation/replacement or repair").

(5) Similarity of Advertising

The fifth factor in the seven factor likelihood of confusion analysis is similarity of advertising.  As discussed in Section IIIB(1), Synergistic engages in national and internet advertising for its  GLASS DOCTOR® Mark.  And, although Synergistic maintains a national toll-free number, individual franchises advertise through listings in the local phonebook. Korman advertises in the phonebook, as well as through flyers, on invoices, and through business signage, including on signs affixed to Korman's repair vehicle.  UF 44.  Korman estimates that ninety-to ninety-five percent of customers using her WINDSHIELD DOCTOR Business come to that business via telephone call.  UF 44.

Korman's WINDSHIELD DOCTOR Business has been advertised and promoted in the Virginia Beach area through Yellow Pages advertisements and listings and White Pages telephone directory listings in the Verizon/Bell Atlantic and Community PhoneBook telephone directories.  UF 44.  Since at least 2000, Korman has also advertised her WINDSHIELD DOCTOR Business in those same telephone directories using her GLASS DOCTOR Mark.  UF 47.  These listings have always appeared under the heading "Glass – Automobile, Plate, Window, Etc."  UF 45.  Neither Verizon nor Community Phone Book Yellow Page books provide a separate section for "windshield repair."  UF 46.  The parties agree that Synergistic's Virginia Beach GLASS DOCTOR®'s Verizon and Community PhoneBook Yellow Pages advertisements and directory listings will appear also under the heading, "Glass – Automobile, Plate, Window, Etc."  The heading is dedicated to listing companies in the Virginia Beach area

13

that provide automobile, residential, and commercial glass installation, replacement and repair services.  Id.

The parties stipulated that Korman has used her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark interchangeably in commerce – offering the same service to the same customers at the same prices in the same advertising media in Virginia Beach, Norfolk, Chesapeake, and Portsmouth, Virginia. UF 38.  Given this prior use, as well as the obvious importance of phonebook advertising in the industry, the likelihood of confusion based upon similar advertising is high.

(6) Defendant's Intent

Intent of the defendant is the sixth factor in the seven factor likelihood of confusion analysis.  The following stipulations of the parties are probative of Korman's intent:

> Korman admits her awareness that her father, Myron Fine, had, from 1974 to 1989, operated a windshield repair business in Richmond, Virginia, using the business name "The Glass Doctor."
>
> During Korman's June 29, 2005 deposition, when asked about her choice of business names, she testified that she used "A Windshield Doctor, The Windshield Doctor, Doctor Windshield, Glass Doctor, and other names that will get me business. ...[I]f I could use 100 names and have 100 places in the phone book, then – that's why I've used more names, just to get more places in the phone book."  Korman further testified that she advertised using her GLASS DOCTOR Mark "because there was no one in this area."
>
> During his deposition on the same day, the vice-president of the WINDSHIELD DOCTOR Business admitted that "the only reason I know of that we have used [a telephone listing for GLASS DOCTOR is] ... because there was no other listing like that in the phone book.  It would just be a better way to get more business for The Windshield Doctor."

UF 49 and 48, respectively.

14

During her deposition, Korman also testified that she knew her father stopped using the business name "The Glass Doctor" "because there was somebody with the same name in the geographical area." Synergistic's Cross Mot. Summ. J. at Tab 7, p. 49. Combined with her interchangeable use of the names, this evidence clearly indicates that Korman intended for customers to view the Glass Doctor and Windshield Doctor as one and the same.

However, the evidence does not constitute the insidious attempt to profit from another's reputation condemned in <u>Pizzeria Uno</u>. Subtle though the distinction may be, Korman did not hold herself out to be a GLASS DOCTOR® franchise. Instead, she created the impression that, within the Virginia Beach area, "A Windshield Doctor," "Doctor the Windshield," and "Glass Doctor" were all her the WINDSHIELD DOCTOR® business. Deposition of Jody Fine Korman, Synergistic's Cross Mot. Summ. J. at Tab 7, pp. 70-72. As stated in section IIIB(2) *supra*, Korman's belief that the Glass Doctor name was so like her business's name that it would successfully refer customers to the WINDSHIELD DOCTOR® is strong evidence of the similarity of the marks. It is, however, less compelling evidence of intent to infringe.

(7) Actual Confusion

The seventh of seven factors is actual confusion. "[I]t is not necessary for the owner of the registered trademark to show actual confusion," <u>Pizzeria Uno</u>, 747 F.2d at 1527 (citations omitted); however, "evidence of actual confusion . . . is considered the best evidence of likelihood of confusion." <u>Contemporary Restaurant Concepts</u>, 753 F. Supp. at 1565 (citations omitted). Several of the parties stipulations are telling in this regard:

> Synergistic is presently unaware of any inquiry or communication reflecting any actual or suggested confusion or mistake as to any

15

> affiliation, association or connection between the business
> conducted under Synergistic's GLASS DOCTOR® Mark and
> Korman's windshield repair services business.
>
> Synergistic is presently unaware of any complaint or other inquiry
> or communication by any person regarding the quality or lack of
> quality of Korman's services.
>
> Synergistic has not suffered any loss of business in the Virginia
> Beach area prior to the filing of this cause of action.

UF 27 - 29.

Thus, no evidence is before the Court that Korman's current use of the WINDSHIELD

DOCTOR® Mark or her prior use of the GLASS DOCTOR® Mark caused actual confusion

during the relevant time period.

Assessing the seven factors, the first favors a finding of likelihood of confusion, the

second, third, fourth, and fifth factors strongly favor the same finding, the sixth factor mildly

disfavors that finding, and seventh factors strongly disfavors a finding of likelihood of confusion.

Adding weight, though not decisive, is the Fourth Circuit's indication that under certain

circumstances "it has been generally held that . . . there is such similarity as to create a likelihood

of confusion." Pizzeria Uno, 747 F.2d at 1530. Those circumstances exist when both marks are

composite marks and "the dominant word is suggestive and is identical in the two marks, with a

difference in the two marks only in the prefix, and where the product involved, though 'not being

identical,' 'belongs to the same general class of merchandise' or service . . . ." Id. (citing Bon

Ami Co. v. McKesson & Robbins, 25 C.C.P.A. 826 (CCPA 1938), and American Throwing Co.

v. Famous Bathrobe Co., 45 C.C.P.A. 737 (CCPA 1957). Clearly the aforementioned

circumstances are present in this case. Having weighed the seven factors, the Court

independently arrives at the same conclusion: the material, undisputed facts disclose a likelihood

of confusion.  Thus, summary judgment is appropriate on Counts 1, 3, and 5.  See Pinehurst, 148

F.3d at 422 (citing Lone Star, 43 F.3d at 935)).

C.  Count 4

In Count 4, Synergistic asserts a claim under the Virginia Consumer Protection Act

(VCPA), Va. Code Ann. §§ 59.1-198 et seq.  The VCPA creates a cause of action for "any

person who suffers loss as a result of a violation of this chapter . . . ."  Va. Code Ann. § 59.1-

204A.  Synergistic falls within the statutory definition of "person" because it is a limited liability

corporation.  See Va. Code Ann. § 59.1-198.  Thus, Synergistic is entitled to an award of actual

damages or a penalty if it suffered a loss as a result of Korman's violation of the VCPA.

Synergistic asserts that Korman committed the following violations of the VCPA:

> (1) Misrepresenting goods or services as those of another;
>
> (2) Misrepresenting the source, sponsorship, approval, or certification of goods or services; and
>
> (3) Misrepresenting the affiliation, connection, or association of the supplier, or of the goods or services, with another.

Va. Code Ann. §§ 59.1-200A(1), (2), and (3).

To satisfy the statute, a misrepresentation must be "a false representation, of material fact, made

intentionally and knowingly, with intent to mislead. . . ."  Richmond Metro. Auth. v. McDevitt

St. Bovis, Inc., 256 Va. 553, 557-558 (1988).  As discussed by the Court earlier, Korman created

a substantial likelihood of confusion between the GLASS DOCTOR® and the WINDSHIELD

DOCTOR®.  She intentionally blurred the distinction between the names because she thought it

would get her business and "because there was no one in this area." UF 48.

The undisputed facts in the record demonstrate that Korman violated the above-listed

17

sections of the VCPA.  Due to Korman's actions, Synergistic was forced to overcome at least

four years of confusion of its name when it entered the Virginia Beach market.  The Fourth

Circuit has cited with approval the notion that infringement "gives rise to irreparable injury, in

that plaintiff has lost control of its business reputation . . . ."  Lone Star, 43 F.3d at 939 (citing

Philip Morris Inc. v. MidWest Tobacco Inc., 9 U.S.P.Q.2d (BNA) 1210, 1215 (E.D. Va. 1988).

And although "there may be no monetary recovery available. . . ," "there is an inherent injury. . .

."  Id.  Korman's violations of the VCPA created a similar loss of control and inherent injury;

therefore, Synergistic is entitled to summary judgment on Count 4 as a result.

**IV. RELIEF:**

      Synergistic prays for actual damages, costs, and attorney's fees, pursuant to 15 U.S.C. §§

1116 and 1117 and the VCPA, cancellation of the WINDSHIELD DOCTOR® trademark

registration, pursuant to 15 U.S.C. §1119, and injunctive relief, pursuant to 15 U.S.C. §§ 1116

and 1117 and the VCPA.  See Syn. Compl.  To determine the relief appropriate in this case, the

Court held a hearing on September 19, 2005, during which both parties presented evidence and

argument to the Court in addition to their prior stipulations.

A.  Findings of Fact

Based upon all of the evidence before it, the Court makes the following findings of fact:

      Synergistic is a nationwide franchisor and operator of a glass installation and repair

service system operating under the name GLASS DOCTOR®.  On May 31, 1977, one of

Synergistic's predecessors-in-interest received from the USPTO United States Service Mark Reg.

No. 1,066,929 on the Principal Register, covering the service mark "GLASS DOCTOR," in

block letters, for use in connection with "installation of glass in buildings and vehicles."

Synergistic is the current owner of the GLASS DOCTOR® Registration, and the GLASS

DOCTOR® Registration remains in full force and effect.  The GLASS DOCTOR® Registration

has become incontestable pursuant to Lanham Act § 15, 15 U.S.C. § 1065, because the GLASS

DOCTOR® Mark shown therein has been in continuous use in commerce for more than five

years from the date of registration and because the required affidavit of incontestability has been

filed with, and accepted by, the USPTO.

In 1987, Korman began operating a windshield repair business in the Virginia Beach area

under the service mark "The Windshield Doctor."  From 1974 to 1989, Korman's father, Myron

Fine, had operated a windshield repair business in Richmond, Virginia using the business name

"The Glass Doctor."  In 1989, Myron Fine called Korman and told her that he was changing his

name because a Glass Doctor was coming to town.  Korman did not conduct a specific

investigation into whether another business was using the name Glass Doctor when she opened

her business or when her Dad changed the name of his business.

In 2002, Korman sought to obtain a registration for her THE WINDSHIELD DOCTOR®

Mark.  To assist her in the application process, Korman enlisted the services of an attorney.

Korman's attorney did not inquire about the circumstances under which Korman's father

changed the name of his business; Korman did not discuss those circumstances with her attorney.

The attorney filed an application with the USPTO to register Korman's THE WINDSHIELD

DOCTOR® Mark.  On December 9, 2003, the USPTO granted Korman U.S. Service Mark Reg.

No. 2,790,862 for her THE WINDSHIELD DOCTOR® Mark for use in connection with "repair

services, namely, vehicle windshield repairs for cracks, chips and stars in windshields."

Neither Synergistic nor any of its predecessors-in-interest actually used the GLASS

DOCTOR® Mark in commerce in the Virginia Beach area in connection with windshield repair services prior to 1987.  In June 2000, Korman began advertising her WINDSHIELD DOCTOR Business in the Verizon and Community Phone Book Yellow Page directories using the name GLASS DOCTOR.  On August 25, 2004, Synergistic's in-house counsel sent a certified letter to Korman informing her of Synergistic's prior and superior rights in the GLASS DOCTOR® Mark and requesting the immediate cessation of Korman's use of her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark in connection with her WINDSHIELD DOCTOR Business. Korman ceased advertising under the Glass Doctor name upon receipt of this letter, but continued to use her WINDSHIELD DOCTOR Marks in connection with her WINDSHIELD DOCTOR Business.

The Court FINDS that Korman did not act in bad faith in advertising under the Glass Doctor name, in pursuing the registration of her WINDSHIELD DOCTOR mark, or in continuing to use her WINDSHIELD DOCTOR® mark after receipt of a cease-and-desist letter in August 25, 2004.  It is apparent to the Court that when Korman began advertising under the Glass Doctor name she did so because there was no other Glass Doctor in the area.  Based on her father's experience, Korman could reasonably believe that she could conduct business in this manner until she received a letter from the "other" Glass Doctor.  Upon receipt of Synergistic's cease-and-desist letter, Korman promptly ceased use of the infringing Glass Doctor advertisement.  Korman persisted in use of her WINDSHIELD DOCTOR® mark and could reasonably believe she possessed a valid, federally registered service mark at the time.  When applying for registration, Korman enlisted the assistance of an attorney.  As would be expected, Korman, a layperson, relied upon the work performed by counsel in preparing her application

20

and the conclusion drawn by the USPTO - that WINDSHIELD DOCTOR was a registerable

mark.  Her use of this mark, even after receipt of Synergistic's cease-and-desist letter, was not

malicious, fraudulent, willful or deliberate.

B.  Actual Damages, Costs, and Attorney's Fees

15 U.S.C. § 1117(a) allows a plaintiff to recover "(1) defendant's profits, (2) any damages

sustained by the plaintiff, and (3) the costs of the action."  As a condition precedent to an award

of profits, a plaintiff bears the burden of proving a defendant's sales.  Id.  Once proved, a

defendant's sales are presumed to be profit unless a defendant can prove "all elements of cost or

deduction claimed."  Id.  In exceptional cases, the Court "may award reasonable attorney fees to

the prevailing party" as well.  Id.  A case is "exceptional" if the defendant's conduct was

"malicious, fraudulent, willful or deliberate in nature." People for the Ethical Treatment of

Animals v. Doughney, 236 F.3d 359, 370 (4th Cir. 2001) (citing Scotch Whisky Ass'n v.

Majestic Drilling Co., Inc., 958 F.2d 594, 599 (4th Cir. 1991)). In other words, a prevailing

plaintiff must "show that the defendant acted in bad faith."  Id.

Va. Code Ann. § 59.1-204(A) allows a plaintiff to recover "actual damages, or $500,

whichever is greater."  If violations of the act are willful, a court "may increase damages to an

amount not exceeding three times the actual damages sustained, or $ 1,000, whichever is

greater."  Id.  Willful violations are those that involve knowing and intentional disregard of the

protections afforded consumers.  The legislative intent was to "provide a penalty for intentional

violations of the VCPA (Virginia Consumer Protection Act) in addition to restitution for

damages incurred." Holmes v. LG Marion Corp., 258 Va. 473, 478 (1999).  Additionally, an

award of reasonable attorney's fees and court costs may accompany judgments under the VCPA.

Va. Code Ann. § 59.1-204(B).  But attorney's fees may only be awarded under the VCPA if the judgment grants damages.  Pitchford v. Oakwood Mobile Homes, Inc., 212 F. Supp. 2d 613, 621 (W.D. Va. 2002).

Neither the record nor the evidence entered by Synergistic at the hearing demonstrate that Synergistic suffered actual damages; therefore, none will be assessed under either 15 U.S.C. § 1117 or Va. Code Ann. § 59.1-204(A).  Synergistic is, however, entitled to a $500 statutory penalty by virtue of Va. Code Ann. § 59.1-204(A).

Synergistic proved Korman's gross sales by introducing into evidence her responses to their first set of interrogatories.  Korman's gross sales from June 1, 2000, through December 31, 2004, were $466,010.  Korman, however, contends that her sales were not entirely profit and seeks to deduct $323,926.  In support of the deduction sought, Korman points to her tax returns from the relevant period.  Korman's tax returns, which are legal documents filed under penalty of perjury, provide strong evidence of her business expenses, but they are not the only evidence in the record on this issue.  Synergistic propounded an interrogatory to Korman regarding her costs and deductions for the same period.  In response to that interrogatory, Korman indicated she incurred $284,275 in costs and expenses.  Thus, there is a discrepancy of $38,651 in the deductions claimed.

Pursuant to 15 U.S.C. § 1117 it is within the Court's discretion to fashion an award of profits that it finds equitable, based upon its own calculations, "if the court shall find that the amount of the recovery based on profits is either inadequate or excessive."  Balancing the equities in this case, the Court concludes that an award of $142,084 in profits is just, especially in light of the other forms of relief ordered below.

Based upon the Court's findings, this is not an exceptional case; thus, an award of attorneys fees is not available under 15 U.S.C. § 1117.  Nor are attorney's fees available under Va. Code Ann. § 59.1-204(B), because no actual damages were awarded under Va. Code Ann. § 59.1-204(A).  Even if attorney's fees were available under the VCPA, the Court would exercise its discretion to make no award in light of the financial impact on Korman of the profits disgorged.

C.  Injunctive Relief and Cancellation of Korman's Mark

Pursuant to 15 U.S.C. § 1116, a court may grant injunctive relief to prevent a violation of 15 U.S.C. § 1114 or § 1125.[6]  Because an injunction prevents future confusion, by enjoining the infringer from use of the similar mark, "an injunction is the preferred remedy" in cases where likelihood of confusion has been found.  Lone Star, 43 F.3d at 939 (citing Philip Morris Inc. v. MidWest Tobacco Inc., 9 U.S.P.Q.2D (BNA) at 1215).  For the reasons discussed in Section IIIB of this opinion, the Court concludes that Korman's continued use of her the WINDSHIELD DOCTOR® Mark will irreparably injure Synergistic in that it will create actual confusion between the Virginia Beach GLASS DOCTOR® franchise and Korman's the WINDSHIELD DOCTOR® business.  Therefore, the Court enjoins Korman in the manner set forth in the injunction entered simultaneously with this Order.  Furthermore, the Court will exercise its power under 15 U.S.C. § 1119 to cancel U.S. Service Mark Reg. No. 2,790,862.

## CONCLUSION

For the reasons stated in this Order, the Court **DENIES** Defendant's motion for summary judgment (Doc. 17) and **GRANTS** Plaintiff's cross-motion for summary judgment (Doc. 23).  The

---

[6]The VCPA also authorizes injunctive relief for violations of the Act.  See Va. Code Ann. § 59.1-203(c).

23

Court Orders that Defendant disgorge profits of $142,084, pay Plaintiff $500 pursuant to Va.

Code Ann. § 59.1-204(A), and reimburse Plaintiff's taxable costs in prosecuting this action, that

U.S. Service Mark Reg. No. 2,790,862 for THE WINDSHIELD DOCTOR® be cancelled, and

that Defendant be enjoined in the manner set forth in the injunction entered simultaneously with

this Order.

The Clerk is **REQUESTED** to send a copy of this order to all counsel of record and to

certify the order to the Director of the Patent and Trademark Office.

It is so **ORDERED**.

/s/
_____
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
October 20, 2005