**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**SYNERGISTIC**
**INTERNATIONAL, L.L.C.,**

               **Plaintiff,**

**v.**                                            **Civil No. 2:05cv49**

**JODY FINE KORMAN, individually,**
**and d/b/a THE WINDSHIELD DOCTOR®,**
**A WINDSHIELD DOCTOR, and**
**GLASS DOCTOR,**

               **Defendant.**

## OPINION & ORDER

This matter is before the Court on remand from the United States Court of Appeals for

the Fourth Circuit.  For the reasons set forth herein, the Court **HOLDS** that Plaintiff is entitled to

an award of Defendant's profits and Defendant is **ORDERED** to disgorge her profits of

**$142,084** to Plaintiff.

### I.  Factual and Procedural Background

Plaintiff filed a Complaint on January 22, 2005, alleging five causes of action: (1) service

mark infringement under Section 32 of the Trademark Act of 1946 (the "Lanham Act"), 15

U.S.C. § 1114; (2) necessary cancellation of Defendant's federal trademark registration under

Section 2 of the Lanham Act, 15 U.S.C. § 1052; (3) federal unfair competition in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (4) unfair methods of competition and

unfair or deceptive trade practices under the Virginia Consumer Protection Act, ("VCPA"), Va.

Code § 59.1-196, et seq.; and (5) unfair competition in violation of the common law of the

Commonwealth of Virginia.  Complaint (Doc. 1) at 1-2.  Defendant moved for summary

judgment (Doc. 17) and Plaintiff filed a cross-motion for summary judgment (Doc. 23).

The parties stipulated as to several undisputed facts ("UF") in the Final Pretrial Order.

Doc. 31.  Plaintiff is a nationwide franchisor and operator of a glass installation and repair

service system operating under the name GLASS DOCTOR®.  Defendant is the owner/operator

of a windshield repair business in the Virginia Beach area under the mark THE WINDSHIELD

DOCTOR®.

On May 31, 1977, one of Plaintiff's predecessors-in-interest received from the United

States Patent and Trademark Office ("USPTO") United States Service Mark Reg. No. 1,066,929

on the Principal Register, covering the service mark "GLASS DOCTOR," in block letters, for

use in connection with "installation of glass in buildings and vehicles."  UF 31.  Plaintiff is the

current owner of the GLASS DOCTOR® registration, and the GLASS DOCTOR® registration

remains in full force and effect.  Id.  The GLASS DOCTOR® registration was issued by the

USPTO without requiring proof of secondary meaning under § 2(f) of the Lanham Act, 15

U.S.C. § 1052(f).  Id.  The GLASS DOCTOR® registration has become incontestable pursuant

to § 15 of the Lanham Act, 15 U.S.C. § 1065, because the GLASS DOCTOR® mark shown

therein has been in continuous use in commerce for more than five years from the date of

registration and because the required affidavit of incontestability has been filed with, and

accepted by, the USPTO.  Id.

In 1987 Defendant began operating a windshield repair business in the Virginia Beach

area under the name "The Windshield Doctor."  UF 18.  In 2002, Defendant filed an application

with the USPTO to register THE WINDSHIELD DOCTOR® mark.  UF 22.  On December 9,

2003, the USPTO granted Defendant U.S. Service Mark Reg. No. 2,790,862 for her THE WINDSHIELD DOCTOR® mark for use in connection with "repair services, namely, vehicle windshield repairs for cracks, chips and stars in windshields."  UF 23.

In addition to THE WINDSHIELD DOCTOR®, Defendant has used the names "A Windshield Doctor," "Windshield Doctor," and "Doctor Windshield" in association with her business.  UF 34.  Defendant has also used the name "Glass Doctor" in connection with her business.  UF 35.  Defendant testified that she began using the "Glass Doctor" name in connection with her business in 2000.  Id.  Defendant has used her THE WINDSHIELD DOCTOR® mark and the Glass Doctor name interchangeably in commerce—offering the same service to the same customers at the same prices in the same advertising media in Virginia Beach, Norfolk, Chesapeake, and Portsmouth, Virginia.  UF 38.  Defendant's use of her THE WINDSHIELD DOCTOR® mark and the name "Glass Doctor" was without oral or written authorization from Plaintiff.  Id.

Prior to 1987, neither Plaintiff nor any of its predecessors-in-interest actually used the GLASS DOCTOR® mark in the Virginia Beach area in connection with windshield repair services.  UF 14.  In Spring 2005, Plaintiff converted, or "re-flagged," a former Harmon AutoGlass franchise located in Virginia Beach, Virginia, to operate under the GLASS DOCTOR® mark and to provide glass installation, replacement and repair services, specifically including automobile glass repair services, in Virginia Beach, Norfolk, Chesapeake, Portsmouth, and Suffolk, Virginia (the "Virginia Beach area").  UF 26 & 33.  In Summer 2005, the signage and related promotional/advertising materials relating to this location were changed to show operation under the GLASS DOCTOR® mark.  Id.

3

On August 25, 2004, Plaintiff's in-house counsel sent a certified letter to Defendant informing her of Plaintiff's prior and superior rights in the GLASS DOCTOR® mark and requesting the immediate cessation of Defendant's use of her THE WINDSHIELD DOCTOR® mark and the name "Glass Doctor" in connection with her business.  UF 50.  Defendant ceased advertising under the "Glass Doctor" name upon receipt of this letter, but continued to use her THE WINDSHIELD DOCTOR® mark in connection with her business.  Id.

Defendant was not the first "Glass Doctor" in her family.  In 1974 Defendant's father began operating a windshield repair business under the name "Glass Doctor" in Richmond, Virginia.  UF 49.  Defendant testified both at a damages hearing on September 19, 2005, and at her deposition that she knew her father had to change his business's name in 1989 due to the entry into the Richmond market of another "Glass Doctor" and that her father had received legal papers asking him to do so.  Tr., Sept. 19, 2005 (Doc. 37) at 20-25; Doc. 23, Ex. 7 at 40.  While the parties disputed whether Defendant knew in 1989 that her father received "legal papers," or instead only discovered in 2004 that "legal papers" were used after discussing her present situation with her father, see Tr., Sept. 19, 2005 at 21-22, Defendant admitted to being aware that another Glass Doctor existed.  Id. at 23.  However, Defendant did not feel that it would be a problem for her to list her business number under the name "Glass Doctor" in the local telephone book, because no other Glass Doctor was doing business in her area.  Id. at 34-35.  At the damages hearing Defendant also admitted that she listed any business names in the phone book that she thought would generate business for her, and that she had used a number of different names that employed the word "doctor" in her business.  Id. at 29.  The parties stipulated that Defendant and her business's vice-president testified to the following at their depositions:

4

> [W]hen asked about her choice of business names, [Defendant] testified that she used "A Windshield Doctor, The Windshield Doctor, Doctor Windshield, Glass Doctor, any other names that will get [Defendant] business . . . . [I]f [Defendant] could use 100 names and have 100 places in the phone book, then—that's why I've used more names, just to get more places in the phone book." [Defendant] further testified that she advertised using her GLASS DOCTOR Mark "because there was no one in the area." During his deposition on the same day, the vice-president of the WINDSHIELD DOCTOR Business admitted that "the only reason I know of that we have used [a telephone listing for GLASS DOCTOR is] . . . because there was no other listing like that in the phone book. It would just be a better way to get more business for The Windshield Doctor.

UF 48.

By letter dated September 9, 2005, the Court informed the parties that it would grant summary judgment to Plaintiff on the issue of liability and hear evidence and argument concerning the appropriate relief on September 19, 2005. At the damages hearing, the Court commented that attorneys' fees and treble damages would not be appropriate under the Lanham Act, 15 U.S.C. § 1117(a), in light of Defendant's excuses for the violations. Tr. Sept. 19, 2005 at 90. However, the Court held that Plaintiff had established the right to some monetary recovery under the act. Id. at 91. The Court observed at the hearing that the amount of such recovery was problematic, but it repeatedly stated that Plaintiff had proven its right to monetary damages. Accordingly, it encouraged the parties to meet and confer as to the amount of the recovery. Id. at 92-94.

When the parties failed to reach an agreement, the Court granted Plaintiff a statutory recovery under Virginia law, declined to award attorneys' fees under Virginia law, permanently enjoined Defendant from infringing Plaintiff's GLASS DOCTOR® mark or any other trademarks owned by Plaintiff, and granted Plaintiff a monetary recovery under the Lanham Act. 402 F. Supp. 2d at 664-67. The Lanham Act provides for monetary recoveries as follows:

5

[T]he plaintiff shall be entitled, subject to the provisions of sections 1111 and 1114 of this title, and subject to the principles of equity, to recover

(1) defendant's profits,

(2) any damages sustained by the plaintiff, and

(3) the costs of the action.  The court shall assess such profits and damages or cause the same to be assessed under its direction.  In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed.  In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount.  If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case.  Such sum in either of the above circumstances shall constitute compensation and not a penalty.  The court in exceptional cases may award reasonable attorney fees to the prevailing party.

15 U.S.C. § 1117(a).  Under § 1117(a), the Court awarded Defendant's profits from June 1,

2000, to December 31, 2004, to Plaintiff:

Synergistic proved Korman's gross sales by introducing into evidence her responses to their first set of interrogatories.  Korman's gross sales from June 1, 2000, through December 31, 2004, were $466,010.  Korman, however, contends that her sales were not entirely profit and seeks to deduct $323,926.  In support of the deduction sought, Korman points to her tax returns from the relevant period.  Korman's tax returns, which are legal documents filed under penalty of perjury, provide strong evidence of her business expenses, but they are not the only evidence in the record on this issue.  Synergistic propounded an interrogatory to Korman regarding her costs and deductions for the same period.  In response to that interrogatory, Korman indicated she incurred $284,275 in costs and expenses.  Thus, there is a discrepancy of $38,651 in the deductions claimed.

Pursuant to 15 U.S.C. § 1117 it is within the Court's discretion to fashion an award of profits that it finds equitable, based upon its own calculations, "if the court shall find that the amount of the recovery based on profits is either inadequate or excessive."  Balancing the equities in this case, the Court concludes that an award of $142,084 in profits is just, especially in light of the other forms of relief ordered below [referring to injunctive relief and the cancellation of Defendant's trademark].

402 F. Supp. 2d at 666.  The Court therefore accepted Defendant's testimony as to her expenses

6

over Plaintiff's objections, despite the discrepancy of $38,651 between Defendant's testimony and her tax returns on the one hand, and her response to Plaintiff's interrogatory on the other.  In adopting the version of Defendant's expenses most favorable to Defendant, Plaintiff's monetary recovery was $38,651 less than it would have been based on Defendant's responses to Plaintiff's interrogatories.

Under § 1117(a)(2), the Court did not award Plaintiff any actual damages, as "[n]either the record nor the evidence entered by Synergistic at the hearing demonstrate that Synergistic suffered actual damages . . . . " Id. at 666.  As to attorneys' fees under § 1117(a)(3), the Court held that "this is not an exceptional case; thus, an award of attorneys' fees is not available . . . . " Id.  However, the Court did award Plaintiff its taxable costs under § 1117(a)(3).  Id. at 667.

Defendant appealed both the Court's finding of liability and the monetary recovery awarded by the Court.  The Fourth Circuit affirmed the Court's holding as to Defendant's liability—that Defendant had violated Plaintiff's GLASS DOCTOR® trademark with phonebook entries under the same name that directed callers to her Windshield Doctor business. Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174 (4th Cir. 2006).  The Fourth Circuit also affirmed the Court's cancellation of Defendant's THE WINDSHIELD DOCTOR® trademark, the Court's injunction ruling, its denial of attorney fees under Virginia and federal law, and its award of $500 to Plaintiffs under the Virginia Consumer Protection Act.  Id. at 176.  The Fourth Circuit did not speak to the Court's award of Plaintiff's taxable costs under the Lanham Act.  See id.

However, the Fourth Circuit vacated the Court's award of Defendant's profits under the Lanham Act and remanded for further proceedings.  Id.  The Fourth Circuit determined that the

7

Court abused its discretion by not adequately explaining its balancing of the equities, and that

the Court should have instead applied a six-part test used by the Third and Fifth Circuits to

determine the amount of monetary recovery appropriate under the Lanham Act.  Id. at 174-76.

The Fourth Circuit articulated the test employed by the Third and Fifth Circuits as follows:

> (1) whether the defendant had the intent to confuse or deceive;

> (2) whether sales have been diverted;

> (3) the adequacy of other remedies;

> (4) any unreasonable delay by the plaintiff in asserting his rights;

> (5) the public interest in making the misconduct unprofitable; and

> (6) whether it is a case of "palming-off."[1]

Id. at 175 (citing Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 175 (3d Cir. 2005); Quick

Techs., Inc. v. Sage Group PLC, 313 F.3d 338, 349 (5th Cir. 2002)).  These enumerated factors

are not exhaustive, and the Court may consider other factors "that may be relevant in the

circumstances . . . ."  Id. at 176.  The Fourth Circuit instructed the Court to "[i]n each instance . .

. explain its reasoning and the impact of the relevant factors."  Id.

## II.  Discussion

### A.  Enumerated Factors

#### 1.  Whether Defendant Intended to Confuse or Deceive

This factor "addresses whether there has been a willful infringement on the trademark

rights of the plaintiff, or whether the defendant has acted in bad faith."  Id. at 175 (citations

---

[1] "Palming-off" is the misrepresentation to the public that the defendant's products are those of the plaintiff.  See 470 F.3d at 176 (citations omitted).

8

omitted).   While "willfulness" is not a predicate for an award of damages under § 1117(a), id. (citations omitted), "a lack of willfulness or bad faith should weigh against an award of damages being made," id., and is "a highly pertinent factor," id. at 175 n.13.

On appeal, Defendant emphasized that "the court specifically found that she neither acted in 'bad faith' nor was the use of her 'THE WINDSHIELD DOCTOR' mark 'malicious, fraudulent, willful or deceitful.'"  Id. at 175 (citing 402 F. Supp. 2d at 665-66).  This Court had found an absence of "bad faith" because:

> It is apparent to the Court that when Korman began advertising under the Glass Doctor name she did so because there was no other Glass Doctor in the area.  Based on her father's experience, Korman could reasonably believe that she could conduct business in this manner until she received a letter from the "other" Glass Doctor. Upon receipt of Synergistic's cease-and-desist letter, Korman promptly ceased use of the infringing Glass Doctor advertisement.  Korman persisted in use of her WINDSHIELD DOCTOR® mark and could reasonably believe she possessed a valid, federally registered service mark at the time.  When applying for registration, Korman enlisted the assistance of an attorney.  As would be expected, Korman, a layperson, relied upon the work performed by counsel in preparing her application and the conclusion drawn by the USPTO—that WINDSHIELD DOCTOR was a registerable mark.  Her use of this mark, even after receipt of Synergistic's cease-and-desist letter, was not malicious, fraudulent, willful or deliberate.

402 F. Supp. 2d at 665.  The Court also found that Defendant was not malicious, fraudulent, willful, or deceitful and, therefore, Plaintiff was not entitled to attorneys' fees under § 1117(a). Id. at 665-66.  The Court's prior findings that Defendant did not willfully infringe upon Plaintiff's trademark and that Defendant did not act in bad faith weigh against a monetary recovery under § 1117(a).

However, Defendant's awareness of her father's legal problems with the "Glass Doctor" trade name, and her continued use of the "Windshield Doctor"  mark after being requested to cease and desist, established her awareness of actual or potential problems.  Such awareness does

not rise to the level of malicious misconduct, but it does weaken the impact of this factor.

## 2. Whether Sales have been Diverted

The second factor "involves the issue of whether the plaintiff lost sales as a result of the defendant's trademark infringement activities, and the extent to which the plaintiff had entered the market area where the infringement occurred."  470 F.3d at 175.  The appellate court observed:

> We are satisfied that, in this situation, Synergistic's non-entry into the Virginia Beach marketplace is an important factor with respect to the assessment of any damages.  The fact that a plaintiff had not entered the relevant marketplace when the infringement was ongoing, in combination with the fact that no sales were diverted, should weigh against an award being made.

Id. at 175-76.

However, Defendant used the "Glass Doctor" name and the other variations on the THE WINDSHIELD DOCTOR mark to build up her business over a period of over four (4) years. UF 48.  She also continued to use "Windshield Doctor" after Plaintiff's request to cease and desist.  It is difficult to quantify Defendant's degree of success in this respect, and Plaintiff did not attempt to do so.  UF 27-29.  If Defendant was correct in her belief that the use of multiple trade names would build up her business, UF 48, then she no doubt will continue to benefit from the prior use of multiple trade names, including her prior infringement of the GLASS DOCTOR® mark, as well as the multiple "Windshield Doctor" marks.  See UF 38 (Defendant used the name "Glass Doctor" and her mark THE WINDSHIELD DOCTOR® interchangeably). The second factor precludes an award of monetary relief under subsection 1117(a)(2) and weighs against an award of profits under § 1117(a)(1).

## 3. Adequacy of Other Remedies

The third factor "addresses whether another remedy, such as an injunction, might more appropriately correct any injury the plaintiff suffered from the defendant's infringement activities." 470 F.3d at 176 (citations omitted).  The availability of an "adequate remedy" other than damages "should weigh against a damages award." Id.  This suggests, however, that the availability of an "adequate remedy" does not preclude an award of profits or damages. Cf. id.

In the Court's prior Opinion and Order, the Court concluded "that Korman's continued use of her the WINDSHIELD DOCTOR® Mark will irreparably injure Synergistic in that it will create actual confusion between the Virginia Beach GLASS DOCTOR® franchise and Korman's the WINDSHIELD DOCTOR® business." 402 F. Supp. 2d at 667.  The Court reached this conclusion for the reason that it found a likelihood of confusion existed between the GLASS DOCTOR® and THE WINDSHIELD DOCTOR® trademarks. Id. at 658-63.  Such a likelihood existed because the GLASS DOCTOR® mark was sufficiently strong to be deserving of protection; the marks were sufficiently similar so as to cause confusion; a similarity of the goods, services, and facilities of the parties existed; and Defendant used the marks interchangeably in her advertising. Id.  All of these facts supported a finding that a likelihood of confusion existed, despite the fact that Defendant did not act with an insidious intent and that no evidence of actual confusion was proven. Id.  The Court accordingly entered a permanent injunction prohibiting Defendant's future use of THE WINDSHIELD DOCTOR® mark, the GLASS DOCTOR® mark, or any other trademarks held by Plaintiffs. Id. at 666-67.

However, the injunctive relief awarded by the Court is not entirely adequate, since Defendant continues to compete with Plaintiff having built her business while using improper marks for over four (4) years.  Plaintiff thus entered a market from a starting point pre-

11

determined by somebody else's use of its trademark and other offending marks.  Plaintiff's trademark gives Plaintiff the exclusive right to build its business and to make or break the reputation of the "Glass Doctor" in this market.  See Ashley Furniture Indus., Inc. v. SanGiacomo N.A. Ltd., 187 F.3d 363, 368 (4th Cir. 1999) (one purpose of the Lanham Act is "to secure to the owner of the mark the goodwill of his business") (quoting Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 774 (1992)).

The text of § 1117(a) substantiates the conclusion that injunctive relief is not completely adequate, even in the absence of actual damages.  The statute contemplates alternate or additional monetary relief in the form of a defendant's profits and a plaintiff's costs even in the absence of a finding of actual damages.  If a plaintiff had to prove actual damages in order to obtain any monetary recovery, then subparagraphs (a)(1) and (a)(3) would be meaningless and to give them no effect would be contrary to the canons of statutory construction.  See, e.g., Discover Bank v. Vaden, 396 F.3d 366, 369 (4th Cir. 2005) ("It is a classic canon of statutory construction that courts must 'give effect to every provision and word in a statute and avoid any interpretation that may render statutory terms meaningless or superfluous.'") (citation omitted).

The finding that Defendant used offending marks for a period in excess of four (4) years, to the actual or potential detriment of Plaintiff, is a basis for monetary damages, and the impact of this factor favors Plaintiff.

### 4.  Unreasonable Delay by Plaintiff in Asserting Its Rights

The fourth factor "addresses the temporal issue of whether the plaintiff waited too long, after the infringement activities began, before seeking court relief."  470 F.3d at 176.  See Brittingham v. Jenkins, 914 F.2d 447, 456 (4th Cir. 1990) ("In trademark cases, as in other

12

disputes, unreasonable delay in bringing a suit is always a serious impediment to relief being granted.") (citing <u>McLean v. Fleming</u>, 96 U.S. 245, 251 (1878)).  In this matter, the Fourth Circuit commented that "[a] substantial delay between the commencement of infringement activities and the plaintiff seeking judicial relief should weigh against an award of damages." 470 F.3d at 176.

While it is difficult to evaluate the length of time that passed between the infringement activities and Plaintiff's filing of its Complaint, the equitable defense of laches provides a framework in which to do so.  <u>See Brittingham</u>, 914 F.2d at 456 ("laches may be invoked as a defense against claims for damages in trademark infringement actions.") (citations omitted); <u>see also Reno Air Racing Ass'n., Inc. v. McCord</u>, 452 F.3d 1126, 1138-38 (9th Cir. 2006) (evaluating a laches defense to a Lanham Act claim).  Although the availability of laches "depends upon the particular facts and circumstances of each case," the Fourth Circuit has identified three factors that "ordinarily should be considered:"

> (1) whether the owner of the mark knew of the infringing use; (2) whether the owner's delay in challenging the infringement of the mark was inexcusable or unreasonable; and (3) whether the infringing user was unduly prejudiced by the owner's delay.

<u>Jenkins</u>, 914 F.2d at 456 (citations omitted).  While consideration of element (2) would be circular in assessing the reasonableness of any delay in this matter, the owner's knowledge of infringement and any prejudice to the infringing party may inform the reasonableness of when Plaintiff filed its Complaint.  <u>See also McCord</u>, 452 F.3d at 1138 (holding that the defense of laches will bar a trademark infringement claim "only where the trademark holder knowingly allowed the infringing mark to be used without objection for a lengthy period of time.") (internal quotation marks and citations omitted).

Although laches is a distinct defense from a statute of limitations defense, "[i]f the plaintiff filed suit within the analogous limitations period, the strong presumption is that laches is inapplicable." Id. at 1138-39 (internal quotation marks and citations omitted). Conversely, "courts have often presumed that laches is applicable" outside the statute of limitations period. Id. at 1139 (internal quotation marks and citations omitted). "Because the Lanham Act contains no explicit statute of limitation, courts 'borrow' the analogous state time period . . . ." Id.

The analogous state limitation period for this matter is the limitations period under the Virginia Consumer Protection Act ("VCPA"), Va. Code § 59.1-196, et seq., as this was the basis for awarding Plaintiff state law damages for Defendant's conduct. The VCPA provides for a private right of action, Va. Code § 59.1-204, and requires that "[a]ny individual action pursuant to § 59.1-204 for which the right to bring such action first accrues on or after July 1, 1995, shall be commenced within two years after such accrual. The cause of action shall accrue as provided in § 8.01-230." Va. Code § 59.1-204.1. Virginia Code § 8.01-230 sets forth a general rule that a cause of action accrues when the injury occurs, regardless of when it was discovered, except as otherwise provided in Virginia Code § 8.01-249. Section 8.01-249 expressly excludes the VCPA from this general rule and states that VCPA actions accrue "when such fraud, mistake, misrepresentation, deception, or undue influence is discovered or by the exercise of due diligence reasonably should have been discovered." Va. Code 8.01-249(1).

Even if VCPA actions started to accrue at the time of infringement, without reference to a plaintiff's knowledge thereof, the accrual of a federal action—even one that barrows a state statute of limitations period—is a question of federal law. See Cox v. Stanton, 529 F.2d 47, 50 (4th Cir. 1975) (citations omitted) (accrual of federal civil rights action is a question of federal

14

law); <u>Fischer v. Viacom Intern., Inc.</u>, 115 F. Supp. 2d 535, 539 (D. Md. 2000) (applying <u>Cox</u> to a

Lanham Act claim).  "Federal law holds that the time of accrual is when plaintiff knows or has

reason to know of the injury which is the basis of the action."  <u>Cox</u>, 529 F.2d at 50 (citation

omitted).  Therefore, claims for relief under 15 U.S.C. § 1117(a) accrue when the cause of action

is discovered, or reasonably should have been discovered, and are subject to a two-year statute of

limitations in Virginia.

In the present matter, the Court made the following findings of fact regarding the factual

history of the parties' trademark dispute:

> In June 2000, Korman began advertising her WINDSHIELD DOCTOR Business in the Verizon and Community Phone Book Yellow Page directories using the name GLASS DOCTOR.

> On August 25, 2004, Synergistic's in-house counsel sent a certified letter to Korman informing her of Synergistic's prior and superior rights in the GLASS DOCTOR® Mark and requesting the immediate cessation of Korman's use of her WINDSHIELD DOCTOR Marks and her GLASS DOCTOR Mark in connection with her WINDSHIELD DOCTOR Business.  Korman ceased advertising under the Glass Doctor name upon receipt of this letter, but continued to use her WINDSHIELD DOCTOR Marks in connection with her WINDSHIELD DOCTOR Business.

402 F. Supp. 2d at 664-65.  Plaintiff filed its Complaint on January 25, 2005, prior to Plaintiff's

conversion, or "re-flagging," of a former Harmon AutoGlass franchise in Virginia Beach in the

Spring of 2005.  <u>See</u> UF 26.

While Defendant first used the "Glass Doctor" name in the regional phone book in June

2000, the earliest evidence of Plaintiff's awareness of Defendant's infringement is the August

2004 cease-and-desist letter.  Plaintiff also alleged in its Complaint that it purchased the Harmon

AutoGlass franchise sometime in 2004.  Doc. 1 at ¶ 18.  Plaintiff filed suit five months after

mailing the cease-and-desist letter.  There is no evidence that Plaintiff knew of the infringement

more than two years prior to the filing of its Complaint.  Nor does the record suggest that

Plaintiff should have known of the infringement sooner: the regional nature of Defendant's

activities and Plaintiff's absence from the regional market until it converted the Harmon

AutoGlass franchise support the conclusion that Plaintiff pursued its rights in a timely fashion.

Cf. McCord, 452 F.3d at 1139 (looking to the location and scope of the defendant's commercial

activity in determining whether the plaintiff knew or should have known of the defendant's

infringement).

Defendant has not suffered prejudice due to the lapse of time between Plaintiff's

knowledge of the infringement and the filing of the Complaint.  Plaintiff timely informed

Defendant via the August 2004 letter of its awareness of Defendant's activities and Defendant

immediately stopped using the "Glass Doctor" name to build up its business.  UF 50.

Furthermore, Defendant was aware of the existence of another "Glass Doctor" from her father's

attempt to operate his business under the same name.  UF 49; Tr., Sept. 19, 2005 at 20-25; Doc.

23, Ex. 7 at 40.

For the reasons set forth above, Plaintiff did not unreasonably delay in asserting its rights.

This fourth factor therefore weighs in favor of awarding Plaintiff monetary relief under the

Lanham Act.

### 5.  The Public Interest in Making the Misconduct Unprofitable

The Fourth Circuit stated that the public's interest in making the misconduct unprofitable

is measured by reference to "the balance that a court should strike between a plaintiff's right to

be compensated for the defendant's trademark infringement activities, and the statutory right of

the defendant to not be assessed a penalty."  470 F.3d at 176.  The Fourth Circuit did not further

16

elucidate this factor or its application to the present matter, other than to reiterate that 15 U.S.C. § 1117(a) "specifically provides that any damages award 'shall constitute compensation and not a penalty.'" Id. at 176 n.14.

Section 1117(a) authorizes the Court to treble damages awarded under § 1117(a)(2) and to award a plaintiff more or less than the defendant's profits under § 1117(a)(1). The statute authorizes a court to assess damages "for any sum above the amount found as actual damages, not exceeding three times such amount." 15 U.S.C. § 1117(a). The statute also authorizes a recovery of profits and, "[i]f the court shall find that the amount of the recovery based on profits is either inadequate or excessive," then "the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." Id. The statute concludes that "[s]uch sum in either of the above circumstances shall constitute compensation and not a penalty" and authorizes and award of attorneys' fees in exceptional cases. Id.

The Court balanced the "plaintiff's right to be compensated for the defendant's trademark infringement activities, and the statutory right of the defendant to not be assessed a penalty" at the September 19, 2005, damages hearing. The Court stated on multiple occasions that, in awarding damages, it would consider the Defendant's financial information as established by the evidence. Tr. Sept. 19, 2005 at 90-94. However, Defendant has offered very little financial information in evidence. For example, the only portion of her tax return identified by Defendant as an exhibit is a Schedule C "Profit or Loss From Business," which was actually marked as Plaintiff's Exhibit # 27. There is no evidence as to whether or not Defendant had other sources of income such as other employment or the operation of another business or businesses. Further,

17

there is no evidence of the amount or percentage of time Defendant spent in the operation of the

subject business.  Nor has Defendant offered evidence of the amount of her income or profits

from the origination of the windshield business from 1987, <u>see</u> Defendant's Supplemental

Response to Plaintiff's First Set of Interrogatories to Defendant (Pl.'s Ex. 6), until she began

using Plaintiff's mark in 2000.  To the extent that Defendant offered financial information, the

Court resolved the issue of the amount of her profits in her favor.  Accordingly, the Court,

having reduced Defendant's profits to the amount she claimed, **FINDS** that Defendant has

offered no evidence, financial or otherwise, to persuade it to exercise its discretion to further

reduce her profits.  Neither has Plaintiff offered evidence persuading the Court to increase her

profits when computing the monetary damage award.  However, the Court also stated repeatedly

that Plaintiff has shown that some monetary recovery was warranted by Defendant's trademark

infringement activities.  <u>See</u> <u>id.</u>

The rationales for awarding monetary damages include the inadequacy of injunctive

relief alone, Defendant's prior awareness of her father's problems with another "Glass Doctor,"

and Defendant's belief, unchallenged by Plaintiff, that the use of "Glass Doctor" and other

names as to which she owned no trademark rights would benefit her business.  The fifth factor

enumerated by the Fourth Circuit also weighs in favor of awarding Plaintiff monetary relief, as

the public benefits when a person does not profit by the infringement of another person's

property rights in a trademark.

### 6.  "Palming-off"

The sixth factor "involves the issue of whether the defendant used its infringement of the

plaintiff's mark to sell its products, misrepresenting to the public that the defendant's products

18

were really those of the plaintiff." 470 F.3d at 176 (citations omitted).  The Fourth Circuit

commented that "if 'palming-off' is shown, such activity should weigh in favor of a damages

award." Id.  In its prior Opinion and Order, the Court found no evidence of an "insidious

attempt to profit from another's reputation" and that Defendant "did not hold herself out to be a

GLASS DOCTOR® franchise." 402 F. Supp. 2d at 662.  In light of these prior findings, no

evidence suggests that this was a case of "palming-off" and, therefore, the sixth factor weighs

against an award of damages.

### B.  Summary of All Factors Relevant to an Award of Damages

The Fourth Circuit instructed the Court to consider the six enumerated factors discussed

above as well as other factors "that may be relevant in the circumstances . . . ." 470 F.3d at 176.

Three of the six factors impact in favor of awarding compensation to Plaintiff, and three to the

contrary.  Neither the statute nor the Fourth Circuit's analysis of the Third and Fifth Circuits'

decisions provides a formula for counting the factors in determining whether damages should be

awarded or whether they should be adjusted based on the number of factors favorable to either

party.  The statute does specifically set forth the scheme for proving Defendant's profits and

provides that the Court may in its discretion award damages based on Defendant's profits in a

greater or lesser sum than proven based upon what is just according to the circumstances of the

case.  The statute also states that the sum awarded for profits or actual damages shall constitute

compensation and not a penalty, but also provides for trebling actual damages and the award of

attorneys' fees in exceptional cases.  The statute does make it clear that an award of Defendant's

profits does not require proof of any discreet amount of lost profits by Plaintiff, nor is a finding

of willful or malicious misconduct by Defendant necessary to support the award of Defendant's

profits to Plaintiff.

The Court **FINDS** that, among the six (6) enumerated factors, factor number three, the

adequacy of the remedy, has the most impact.  Plaintiff continues to compete with Defendant,

Doc. 49, "Certificate of Compliance of Order Permanent Injunction," albeit under a different

trade name.  Plaintiff so competes after having been found to have built her business while

improperly using Plaintiff's mark and impermissibly similar marks, thus Plaintiff enters the

market competing with a business built while violating its rights and is farther deprived of its

right to build its business anew through the initial use of its protected mark.  Thus the granting of

an injunction without monetary damages is not an adequate remedy.

Awarding Plaintiff Defendant's profits also promotes the public's interest in making this

defendant's misconduct unprofitable as set forth in the fifth enumerated factor.

Two factors in addition to the enumerated factors weigh in favor of awarding Plaintiff the

Defendant's profits under the circumstances of this case.  Both additional factors also affect the

weight the Court affords the enumerated factors.

First, Defendant's awareness of her father's prior experience with the name "Glass

Doctor" is relevant to an award of monetary relief in this case.  Defendant testified both at the

damages hearing and at her deposition that she knew her father had to change his business's

name in 1989 due to the existence of another "Glass Doctor."  Tr., Sept. 19, 2005 at 20-25; Doc.

23, Ex. 7 at 40.  Thus, Defendant knew that another Glass Doctor existed.  Id. at 23.  However,

Defendant excused her conduct by claiming she listed her business number under "Glass Doctor"

in the local telephone book, because no other Glass Doctor was doing business in her area.  Id. at

34-35.  While such conduct does not rise to the level of willful or malicious, it is not blameless.

Second, Defendant aggressively sought to utilize other trade names to obtain business without regard to others' potential rights to such names.  While her use of other names, including Plaintiff's mark, does not prove bad faith, she was using multiple business names to build up her business, even thought she only sought trademark protection for THE WINDSHIELD DOCTOR®.  Id. at 29.  Defendant testified at her deposition that "she used 'A Windshield Doctor, The Windshield Doctor, Doctor Windshield, Glass Doctor, any other names that will get [Defendant] business . . . . [I]f [Defendant] could use 100 names and have 100 places in the phone book, then—that's why I've used more names, just to get more places in the phone book.'"  UF 48.  Again, while such conduct does not rise to the level of bad faith, neither is it entirely blameless.  These factors lessen the impact of enumerated factors numbered one, two, and six which otherwise mitigated against an award of Defendant's profits.  While enumerated factor number four favors Plaintiff, it similarly has less impact on the Court's decision.

### III.  Conclusion

From the time of the conclusion of the damages hearing this has been a difficult case in which to determine the amount of the monetary recovery to which Plaintiff is entitled.  The Court **FOUND** at the damages hearing and repeatedly confirmed that Plaintiff is entitled to monetary relief.  Injunctive relief alone is inadequate.  Plaintiff's timely assertion of its rights and the balancing of Plaintiff's right to be monetarily compensated for Defendant's infringement activities against Defendant's right not to be assessed a penalty weighs in favor of awarding Plaintiff the profits Defendant obtained during the period of infringement.[2]  The Court **FINDS**

---

[2] These factors were also behind the Court's instructing the parties to seek an agreement as to the amount of monetary recovery at the conclusion of the September 19, 2006, hearing, but they were not articulated according to the standards adopted in the Third and Fifth Circuits.

no reason in the circumstances of this case to award an amount less than or in excess of

Defendant's profits.  The Court has already reduced the amount of Defendant's profits below the

amount claimed by Plaintiff, notwithstanding documented evidence to the contrary, and has, as

well, denied Plaintiff an award of attorneys' fees.  The Court **FINDS** its computation of

Defendant's profits from June 1, 2000, to December 31, 2004, to be a just award of

compensation to Plaintiff according to the circumstances of the case and **ORDERS** Defendant to

disgorge her profits of **ONE HUNDRED FORTY-TWO THOUSAND EIGHTY-FOUR**

**DOLLARS ($142,084.00)** to Plaintiff.

The Clerk is **REQUESTED** to mail a copy of this Opinion and Order to all counsel of

record.

It is so **ORDERED**.


_____
/s/
HENRY COKE MORGAN, JR.
SENIOR UNITED STATES DISTRICT JUDGE


Norfolk, Virginia
February 7, 2007

22